## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| STEFAN PASSANTINO, | |
| PLAINTIFF, | Civil Action No. |
| | 4:23-cv-00300-ELR |
| *v.* | |
| UNITED STATES OF AMERICA, | |
| DEFENDANT. | |

## THE UNITED STATES OF AMERICA'S MOTION FOR JUDGMENT ON THE PLEADINGS AND BRIEF IN SUPPORT

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the United States of America ("United States") moves for judgment on the pleadings on the grounds set forth below.

## I.    INTRODUCTION

Plaintiff Stefan Passantino, a practicing attorney, has filed a complaint under the Federal Tort Claims Act ("FTCA"), in which he has alleged claims for invasion of privacy and civil conspiracy.  Both claims arise from actions allegedly taken by the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"). As shown below, the claims should be dismissed for lack of subject matter jurisdiction because they are barred by the FTCA's intentional tort exception and because the allegations fail to state a claim for invasion of privacy or civil conspiracy.

## II  FACTUAL BACKGROUND[1]

Plaintiff has been a practicing attorney in Washington D.C. at all times relevant to this action.  In early 2022, Plaintiff was contacted by the Save America PAC, on behalf of former Trump White House aide Cassidy Hutchison, to represent Hutchison in connection with a subpoena to testify before the Committee. Complaint, ¶¶ 17, 19. Plaintiff agreed to represent Hutchison and he prepared her to testify before the Committee on numerous occasions. Complaint, ¶¶ 23-29. Plaintiff gave Hutchison standard testimonial instructions and told her to answer questions truthfully and honestly before the Committee. Complaint, ¶¶ 24, 27.

After Hutchison's second interview with the Committee, one of its members allegedly told her that because Plaintiff was being paid by a Trump-affiliated third-party he would not be advancing her interests. Complaint, ¶ 35. From this point onward, the Committee allegedly communicated with Hutchison without Plaintiff's knowledge. Complaint, ¶¶ 37, 38. In May 2022, the Committee interviewed Hutchison for a third time. Complaint, ¶ 40.  After the third interview, Hutchison engaged new counsel. Complaint, ¶ 43. On June 28, 2022, Hutchison

---

[1] For purposes of this motion only, Defendant assumes the specific factual allegations of the Complaint to be true.

testified before the Committee as part of a nationally televised broadcast. Complaint, ¶ 43. Following the national broadcast, Hutchison sat for additional interviews in September 2022. Complaint, ¶ 44.  Following these additional interviews, the Committee allegedly "leaked" transcripts of the interviews to the media. Complaint, ¶ 45.

On December 19, 2022, CNN reporters contacted Plaintiff and informed him that they intended to publish a story about his representation of Hutchison, that they were in possession of at least one transcript of her testimony, and that they believed the Committee would allege he counseled Hutchison not to testify fully and honestly. Complaint, ¶ 46.  That same day, the Committee released the executive summary of its final report. Complaint, ¶ 49.  In its executive summary, the Committee stated that it "ha[d] substantial concerns regarding potential efforts to obstruct its investigation, including by certain counsel (some paid by groups connected to the former President) who may have advised clients to provide false or misleading testimony to the Committee." Complaint, ¶ 49. Plaintiff alleges that the Committee leaked the transcripts to CNN so that CNN would conclude that Plaintiff was the counsel referenced in executive summary. Complaint, ¶ 51.

On December 21, 2022, CNN published an article stating that the Committee claimed to have evidence that a Trump-backed attorney urged a key witness to

mislead them. Complaint, ¶ 54. The CNN article named Plaintiff as the attorney. Complaint, ¶ 55.

The Committee released transcripts of Hutchison's interviews to the public after the Committee released its final report. Complaint, ¶ 58. Plaintiff alleges that the now-public transcripts made it clear that Plaintiff did not instruct Hutchison to lie, and that he told her she should only tell the Committee that she "did not recall" if it were an accurate response. Complaint, ¶¶ 59-60.

On December 20, 2023, Plaintiff filed his complaint (the "Complaint") in the above-captioned action.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A. Rule 12(c) standard

Federal Rule of Civil Procedure 12(c) authorizes a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotations omitted). The Court must "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." *Id.* The "main difference" between a motion for judgment on the pleadings and a motion to dismiss is that

the former "is made after an answer and that answer may also be considered in deciding the motion." *United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011).

A Rule 12(c) motion may seek dismissal both on grounds of subject matter jurisdiction and failure to state a claim. Rule 12(h)(2) specifically provides that, "Failure to state a claim upon which relief can be granted . . . may be raised  . . . (B) by a motion under Rule 12(c)," and Rule 12(h)(3) provides that, "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." *See also Presnell v. Paulding Cnty.*, 454 F. App'x 763, 769 (11th Cir. 2011) (upholding grant of judgment on the pleadings on grounds of sovereign immunity); *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1252 (10th Cir. 2006) ("Because New Mexico has not waived its sovereign immunity, the district court did not err in granting judgment on the pleadings to Armijo and the DAO on Abreu's state-law tort claim.").

## B. The Court lacks subject matter jurisdiction over Plaintiff's claims because they are barred by 28 U.S.C. § 2680(h).

The doctrine of sovereign immunity "shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Plaintiffs cannot sue the United States unless the United States unequivocally has waived its sovereign immunity." *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020) (citing *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir.

2015)). "If sovereign immunity applies, a court lacks subject matter jurisdiction to consider a claim." *Id.* at 1157 n.3 (citing *Zelaya*, 781 F.3d at 1322).

"Through the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." *Zelaya*, 781 F.3d at 1321 (citations omitted). "But that which the Sovereign gives, it may also take away[.]" *Id.* at 1322. In the FTCA, Congress included certain exceptions and conditions "which serve to block the waiver of sovereign immunity that would otherwise occur under the FTCA." *Id.* (citation omitted). "These exceptions 'must be strictly construed in favor of the United States,' and when an exception applies to neutralize what would otherwise be a waiver of immunity, a court will lack subject matter jurisdiction over the action." *Id.* (quoting *JBP Acqs., L.P. v. United States ex rel. F.D.I.C.*, 224 F.3d 1260, 1263-64 (11th Cir. 2000)).

The relevant exception here is the FTCA's intentional tort exception, which preserves, in pertinent part, the United States' sovereign immunity as to any claim "arising out of . . . libel [or] slander." 28 U.S.C. § 2680(h).  Although § 2680(h) lists several specific torts, the phrase "arising out of" has been interpreted broadly to include not only torts that are specifically listed, but also those where the alleged injuries arise from one of the listed torts. *Zelaya*, 781 F.3d at 1333.  The Eleventh Circuit has held that a claim "arises out of" a § 2680

excepted tort if the governmental conduct that is essential to the plaintiff's cause of action is encompassed by the tort.  *O'Ferrell v. United States*, 253 F.3d 1257, 1266 (11th Cir. 2001) ("[T]he exceptions in the FTCA are not limited to the torts specifically named therein, but rather encompass situations where 'the underlying governmental conduct which constitutes an excepted cause of action is essential to plaintiff's claim'") (citing *Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986)).  This is so even if the plaintiff has denominated, as the basis for the cause of action, a tort not found within § 2680(h)'s list of excepted torts. *Zelaya*, 781 F.3d at 1333-34 (further explaining that "a plaintiff cannot circumvent the [intentional tort] exception simply through the artful pleading of its claims").

### 1. The FTCA's intentional tort exception has repeatedly been extended to invasion of privacy claims.

The 11th Circuit has applied this analysis to hold that invasion of privacy claims "arise" out of excepted torts in §2680(h), including libel and slander, and are therefore barred by that exception.  For example, in *O'Ferrell v. United States*, the 11th Circuit affirmed the dismissal of plaintiff's FTCA claim of false light/invasion of privacy that arose out of the government's alleged leak to the media of misrepresentations implicating the plaintiff in mail bombings and threats.  *O'Ferrell*, 253 F.3d at 1266.  The plaintiffs attempted to distinguish their invasion of privacy claims from the libel and slander claims listed in § 2680(h) by

arguing that they suffered mental anguish as a result of their personal hearing and reading of the false statements. The court rejected that distinction, focusing instead on the underlying governmental conduct essential to their claim—the leaking of the statements—and found that it constituted an excepted tort under § 2680(h). *See id.* at 1266.

In *Metz*, 788 F.2d 1528, the 11th Circuit affirmed the dismissal of the plaintiff's FTCA claim for invasion of privacy (as well as false arrest, false imprisonment and intentional infliction of emotional distress) on the ground that the claims were based on plaintiff's contention that he had been a victim of false arrest, which is one of the excepted torts in § 2680(h).

In *Cadman v. United States*, 541 F. App'x 911 (11th Cir. 2013), the plaintiff purported to bring a false light/invasion of privacy claim (as well as a negligence claim) related to statements made by Immigration and Customs Enforcement agents about the plaintiff's handling of an agency program. Even though a false light/invasion of privacy claim is not one of the torts specifically listed in section 2680(h), the Eleventh Circuit affirmed the district court's dismissal of the complaint for lack of subject matter jurisdiction because "all of the allegedly tortious actions here are based on 'statements, representations, or imputations'" by the government, and there was no other independent government action on which the plaintiff's claims could rest *See id.* at 914. Therefore, the claims

"c[a]me within, and are barred, by the libel-slander-misrepresentation exemption of the FTCA." *Id.*

The *Cadman* court went on to further explain that a state law claim may still be barred even if it did not fit squarely within that state's libel, slander, or defamation laws.  In *Cadman*, the plaintiff argued that his claims should not be barred because the statements against him were not necessarily false, and thus he would not be able to sustain an action for defamation.  *Id.*  Rather, the plaintiff continued, the court should recognize that D.C. law had a false light/invasion of privacy claim separate from a traditional action for defamation.  *Id.*

The court rejected this argument, explaining that the proper analysis "is a comparison between the plaintiffs' claim and the 'traditional and commonly understood definition' of the torts excepted by [Section 2680(h)], rather than a comparison with the law of any particular state."  *See id.* ("Accordingly, we reject Mr. Cadman's argument that his possible inability to recover for defamation in the District of Columbia necessarily means that 'his claims must not be for libel [or] slander under the FTCA.'") (citation omitted, alteration in original).

## 2. Plaintiff's invasion of privacy claim should similarly be barred by section 2680(h).

Here, the governmental conduct essential to Plaintiff's invasion of privacy claim is the Committee's allegedly false "narrative" or "story," provided to

CNN, that Plaintiff attempted to obstruct the Committee's investigation by advising Hutchinson to mislead the Committee as to what she recalled regarding the January 6 events:

> The Committee gave an outrageous narrative to media sources about Mr. Passantino's non-existent efforts to obstruct their investigation by impacting the testimony of their 'star' witness, Cassidy Hutchinson, to support its political narrative.

*See* Complaint, ¶ 6.  Plaintiff made this allegation repeatedly, creating a running theme throughout the Complaint.[2]

---

[2] *See* Complaint, ¶ 2 (alleging that the Committee "generated a harmful narrative" about the legal advice Plaintiff gave to his client); *id.*, ¶ 34 (alleging that the Committee leaked private information in order to harm Plaintiff and "advance a preordained political and legal narrative"); *id.*, ¶ 49 (alleging that the Committee released an executive summary of its final report stating that it had substantial concerns regarding efforts by certain counsel who may have advised client]s to provide false or misleading testimony to the Committee); *id.*, ¶ 51 (alleging that the Committee leaked transcripts of Hutchinson's interviews to CNN to suggest that Plaintiff was the unnamed counsel referenced in its executive summary); *id.* at ¶ 55 (alleging that the Committee leaked an "allegation" to CNN that Plaintiff told Hutchinson to tell the Committee she did not recall details that she did, in fact, recall); *id.*, ¶ 68 (alleging that CNN chose to "run the story" given to it by the Committee, a member of the Committee, or a staffer of the Committee); *id.*, ¶ 74 (alleging reputational harm because of "false actions" taken by the Committee); *id.*, ¶ 83 (alleging that the Committee caused the new media "to publish a false story").

If the court were to set aside the allegations of the Committee's allegedly false statements to CNN, the Complaint would devolve into little more than Plaintiff's objections to the Committee disseminating hearing transcripts, communicating directly with his client, and publishing an executive summary without first seeking his input, none of which are relevant to his invasion of privacy claim. In other words, the allegations of the Committee's allegedly false statements are essential to Plaintiff's invasion of privacy claim.  Thus, the claim "arises out of" the libel or slander claims excepted by § 2680(h) and is barred on that basis.  *See O'Ferrell*, 253 F.3d at 1265-66; *Cadman*, 541 F. App'x at 913; *Metz*, 788 F.2d at 1532.

In an attempt to avoid the § 2680(h) bar, Plaintiff alleges that his lawsuit is not based on "the defamatory sting of the ensuing publication" but rather on "the publication of private information."  *See* Complaint, ¶ 83.  It is not clear what private information he is referencing.[3]  To the extent Plaintiff is referring to the alleged leak of the transcripts of Hutchinson's interviews by the Committee, then

---

[3] *See, e.g.*, Complaint, ¶ 2 (alleging that the Committee "published private information"); *id.,* ¶ 34 (alleging that the Committee "leaked private information to news agencies to harm Mr. Passantino and advance a preordained political and legal narrative"); *id.,* ¶ 69 (alleging that the Committee's action in leaking "these private facts" resulted in significant reputational, emotional, and economic damages to Mr. Passantino); *id.,* ¶ 72 (alleging the leak of "private information").

the U.S. Supreme Court's analysis in *Block v. Neal* is instructive.  In that case, the plaintiff had framed her claim against the Farmer Home Administration as one for the negligent supervision of the construction of a house rather than intentional misrepresentation in order to avoid the § 2680(h) bar against misrepresentation claims. *See Block v. Neal*, 460 U.S. 289, 296-97 (1983).  In its analysis of whether the negligent supervision claims nonetheless "arose out" of the misrepresentation claims, the *Block* Court focused on whether the plaintiff had alleged any injury independent from the misrepresentation.  *See Id.  See also Zelaya*, 781 F.3d at 1333 (analyzing whether the alleged injuries arose from one of the listed torts).  The *Block* Court found that plaintiff did in fact allege a separate injury from her negligence claim.  *See Block*, 460 U.S. at 297-98.  In contrast here, Plaintiff does not allege an injury independent of the alleged false narrative he claims the Committee provided to CNN.  *See* Complaint, ¶ 74 (alleging "reputation harm" because of "false actions" taken by the Committee).  To the contrary, Plaintiff alleges that the transcripts actually vindicated him from the allegedly false narrative by "mak[ing] clear" that he did not advise Hutchison to lie to the committee or perjure herself.  *See* Complaint, ¶ 59.[4]

---

[4] Plaintiff also appears to allege that the Committee tortiously interfered with his attorney-client relationship with Hutchinson. *See, e.g.*, Complaint, ¶ 2 (alleging that the Committee "purposely and maliciously interfered in the attorney-client relationship between Passantino and Hutchison"); *id.*, ¶ 4 alleging

### 3. Plaintiff's civil conspiracy claim should be barred by the intentional tort exception for the same reason.

Plaintiff's civil conspiracy claim fails for the same reason.  The Complaint alleges the United States engaged in "the foregoing actions" in agreement with unnamed co-conspirators, including individuals that worked at media companies.  Complaint, ¶ 88.  As with the allegations of public disclosure of private facts, it is not clear which actions are at issue or who the alleged co-conspirators are; however, the only media referenced by the Complaint is CNN, which Plaintiff claims published an article falsely claiming that he advised Hutchinson to mislead the Committee.  *See* Complaint, ¶¶ 54, 55.  To the extent that Plaintiff is alleging that the United States worked in concert with CNN to publish this story, the civil conspiracy allegations would be based on allegations of libelous actions.  *See Weishapl v. Sowers*, 771 A.2d 1014, 1023-24 (D.C. Ct. App. 2001).  Therefore, the civil conspiracy claims likewise arise out of the excepted

---

that the Committee had "backchannel" communications directly with Hutchison "in total disregard for the attorney-client relationship"); *id.*, ¶ 34 ("[T]he Committee interfered with Mr. Passantino's representation of his client"); *id.*, ¶ 72 (alleging the Committee's "interference in Mr. Passantino's representation of his clients").  However, it is unclear how these allegations would support Plaintiff's invasion of privacy claim.  Moreover, any tort based on this conduct would likely be barred by the "interference with contract rights" exception under § 2680(h).  Regardless, the Plaintiff has not asserted an interference claim and, therefore, these allegations are not essential to the injury alleged.

torts of libel/slander. *Cf. Goble v. Ward*, 628 F. App'x 692, 699 (11th Cir. 2015) ("Although Count IV alleges civil conspiracy, not misrepresentation, § 2680(h)'s clause forbidding '[a]ny claim arising out of ... misrepresentation [ or] deceit' applies to Count IV.'") (internal citations omitted).

In short, Plaintiff cannot avoid the application of the FTCA's intentional tort exception by framing his claims as ones for invasion of privacy and civil conspiracy. Consistent with *Metz*, *O'Farrell* and *Cadman*, Plaintiff's claims are barred by the FTCA's intentional tort exception.

## C. Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Even if the Court determines Plaintiff's claims are not barred by the doctrine of sovereign immunity, they nevertheless fail because Plaintiff has not stated a claim for invasion of privacy or civil conspiracy under D.C. law. In FTCA cases, the substantive law governing the underlying tort is determined by the law of the place where the alleged tortious conduct occurred. *See* 28 U.S.C. § 1346(b)(1). Here, the alleged conduct took place in Washington D.C., which means D.C. law governs.

### 1. The Complaint fails to state an invasion of privacy claim.

Under D.C. law, "Invasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of

being invaded." *Wolf v. Regardie,* 553 A.2d 1213, 1216–17 (D.C. Ct. App. 1989). The four constituent torts are: (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private facts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit. *See Greenpeace, Inc. v. Dow Chem. Co.*, 97 A.3d 1053, 1061 (D.C. Ct. App. 2014).

Plaintiff appears to be proceeding under the second theory, the "public disclosure of private facts." *See* Complaint, ¶¶ 82, 83. Thus, he must show: 1) publicity; 2) absent waiver or privilege; 3) given to private facts; 4) in which the public has no legitimate concern; and 5) which would be highly offensive to a reasonable person of ordinary sensibilities. *See Wolf*, 553 A.2d at 1220.

As an initial matter, Plaintiff does not specify what "private facts" the Committee allegedly disclosed. To the extent that Plaintiff is referring to the Committee's alleged leak of the transcripts of Hutchison's interviews, he fails to specify the particular facts contained in those transcripts that he contends are private or why he believes they are private. Similarly, he does not allege sufficient facts to show that they do not involve a matter of public concern or that the disclosure would be highly offensive. His claim fails on this basis alone because Complaint does not give the United States "fair notice" required by Rule 8(a). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that a complaint fails to state a claim when it does not "give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (holding that bare assertions that amount to nothing more than a formulaic recitation of the elements are conclusory and not entitled to be assumed true).

Moreover, looking at the transcripts as a whole, Plaintiff's allegations do not satisfy the elements of a public disclosure claim. The transcripts were not "private"; to the contrary, Plaintiff alleges that they were formally released to the public after the Committee released its final report. *See* Complaint, ¶ 58. Nor has Plaintiff alleged how the transcripts constituted private facts about *him*. The tort of public disclosure of private facts is intended to protect the disclosure of facts regarding an individual's private life. *See* Restatement (Second) of Torts § 652D (1977), Comment b ("The rule stated in this Section applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual.").[5] Plaintiff's legal representation of a witness in a high-profile congressional investigation cannot be deemed to be an intimate detail of the attorney's private life. *See Budik*, 986 F. Supp. 2d at 12 (dismissing claim for public disclosure of private facts where plaintiff's status and achievements as a medical

---

[5] In D.C., courts have adopted the Second Restatement of Torts to determine the appropriate contours of a cause of action for invasion of privacy. *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 11 (D.D.C. 2013).

doctor practicing in a university hospital would seem to be information that is already public); *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 21-22 (D.D.C. 2010) (dismissing claim for public disclosure of private facts where the allegedly private fact "would have been evident to at least a segment" of the community).

With regard to the fourth element, the transcripts clearly involved a matter of public concern:  an investigation carried out by a select committee of the U.S. House of Representatives. The underlying interviews of Hutchinson were undertaken by the legislature for the purpose of investigating the actions of public officials.  The public has an interest in the investigations carried out by legislative branch officials.  Plaintiff's failure to sufficiently allege the disclosure of facts that are not a matter of public concern similarly requires the dismissal of his claim.  *See Parnigoni*, 681 F. Supp. 2d at 21-22("'It is a defense to a claim of invasion of privacy that the matter publicized is of general public interest.'") (quoting *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 589 (D.C. Ct. App. 1985)).

Finally, the transcripts, far from being "highly offensive to a reasonable person of ordinary sensibilities," allegedly vindicated Plaintiff by indicating that he did not advise Hutchinson to lie, perjure herself, or obstruct the Committee's investigation. *See* Complaint, ¶¶ 15, 59; *Budik*, 986 F. Supp. 2d at 12 (holding that the disclosure of plaintiff's status and achievements as a medical doctor is not the

type of information that would be highly offensive to a reasonable person of ordinary sensibilities); *Johnson v. Evening Star Newspaper Co.*, 344 F.2d 507, 508 (D.C. Cir. 1965) (affirming dismissal of claims for public disclosure of private facts where the newspaper identified the plaintiff as an innocent victim of a mistaken identification as a person who committed serious crimes).

Having failed to sufficiently allege at least three elements, Plaintiff's invasion of privacy claim must be dismissed.

### 2. The Complaint fails to state a civil conspiracy claim.

To establish a prima facie case of civil conspiracy, Plaintiff needs to prove: (1) an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) injury caused by an unlawful overt act performed by one of parties to the agreement, (4) pursuant to and in furtherance of the common scheme. *See Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. Ct. App. 2001). D.C. law does not recognize an independent tort action for civil conspiracy. *See id.* Thus, to allege a valid civil conspiracy claim, Plaintiff must be able to allege facts sufficient to state a claim for his underlying invasion of privacy claim. *See id.* As shown above, Plaintiff has failed to do so. As a result, his civil conspiracy claim fails as well.

Additionally, the Complaint fails to allege specific facts sufficient to establish an agreement between the Committee and a co-conspirator, one of the essential

elements of a civil conspiracy claim. *See Weishapl*, 771 A.2d at 1023. Conclusory allegations that an agreement exists do not suffice to state a claim under Rule 8(a). *See Twombley*, 550 U.S. at 556-57. Therefore, Plaintiff's bare allegation, without any supporting facts, that "Defendant and its agents engaged in the foregoing actions in agreement with unnamed co-conspirators, including individuals that worked at media companies, to accomplish their goal of invading Mr. Passantino's privacy and attorney-client relationship to cause harm to his practice of law and standing in the community," is insufficient to state a claim for civil conspiracy.

Accordingly, his civil conspiracy claim should be dismissed.

## CONCLUSION

For the reasons argued above, the United States respectfully requests that its Motion for Judgment on the Pleadings be granted, and that Plaintiff's Complaint be dismissed in its entirety.

This 3rd day of May, 2024.

Respectfully submitted,

RYAN BUCHANAN
*United States Attorney*

*/s/ Neeli Ben-David*

NEELI BEN-DAVID
*Assistant United States Attorney*
Georgia Bar No. 049788
Neeli.Ben-David @usdoj.gov
ANDRES H. SANDOVAL
*Assistant U.S. Attorney*
Georgia Bar No. 643257
Andres.Sandoval@usdoj.gov
A. JONATHAN JACKSON
*Assistant U.S. Attorney*
Georgia Bar No. 852077
Jonathan.Jackson2@usdoj.gov
75 Ted Turner Drive SW
Atlanta, GA 30303
Tel (404) 581-6000
Fax (404) 581-6181

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

STEFAN PASSANTINO,

     PLAINTIFF,

     *v.*

UNITED STATES OF AMERICA,

     DEFENDANT.

Civil Action No.

4:23-cv-00300-ELR

### CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing motion and brief have been prepared using Book Antiqua, 13-point font.

May 3, 2024

                               */s/ Neeli Ben-David*
                               NEELI BEN-DAVID
                               *Assistant United States Attorney*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

STEFAN PASSANTINO,

PLAINTIFF,

v.

UNITED STATES OF AMERICA,

DEFENDANT

Civil Action No.

4:23-cv-00300-ELR

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Bryan P. Tyson, Esq.
The Election Law Group
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339

Jesse R. Binnall, Esq.
Shawn M. Flynn, Esq.
Jared J. Roberts, Esq.
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314

May 3, 2024

/s/ NEELI BEN-DAVID
NEELI BEN-DAVID
*Assistant United States Attorney*

22