**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

STEFAN PASSANTINO,

    PLAINTIFF,

    *v.*

UNITED STATES OF AMERICA,

    DEFENDANT.

Civil Action No.
4:23-cv-00300-ELR

## THE UNITED STATES' RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

The United States responds to Plaintiff's Motion for Default Judgment (Doc. 35) and memorandum law in support (Doc. 35-1) (collectively, the "Motion") as follows:

## INTRODUCTION

Plaintiff argues that he is entitled to the entry of default judgment against the United States because of the latter's untimely answer. However, his argument fails for several reasons. First, the United States' motion to set aside the clerk's entry of default is pending before the Court; if the Court grants the motion, then default judgment would be improper under Rule 55(b). Second, this Court (as well as others) have held that a default judgment should not be entered against the United States solely for a failure to answer or respond to a complaint. Third, under Rule 55(d), a default judgment can only be entered

1

against the United States if the plaintiff can show a right to relief.  As shown below as well as in the United States' previously filed Motion for Judgment on the Pleadings, Plaintiff's claims fail as a matter of law based solely on the pleadings because the Court lacks subject matter jurisdiction to hear them under the Federal Tort Claims Act ("FTCA") and because the allegations are insufficient to a state a claim upon which relief can be granted.  Because the instant Motion is based solely on the four corners of the pleadings, Plaintiff's request for an evidentiary hearing is unnecessary.  Therefore, the Motion should be denied.

## I.  <u>Plaintiff is not entitled to an entry of default judgment on its claims.</u>

Plaintiff's motion for entry of default judgment is premature.  The United States' motion to set aside the clerk's entry of default has been fully briefed and is pending before the Court.  *See* Doc. 25.  If the Court grants the motion and sets aside the default, then default judgment would not be proper because the entry of a default is a necessary prerequisite to the entry of a default judgment.  *See* Fed. R. Civ. P. 55 (b).  As explained in its motion to set aside the default, the United States has satisfied all four factors warranting the setting aside of the default:  (1) Plaintiff has not shown that the failure to timely answer was willful or culpable, (2) the United States took prompt steps to cure the default, (3) setting aside the default would not prejudice Plaintiff and (4) Plaintiff has not shown that the United States's defenses are not meritorious.  *See* Doc.  25 at 1-13.

Plaintiff has not refuted any of these arguments.  *See* Docs. 30, 33.  Therefore, the

default should be set aside, which would make the entry of a default judgment

improper.[1]

Even if the default were left in place, a default judgment would not be proper

here.  The entry of a default judgment against the United States carries a higher

burden than against private parties.  According to Rule 55(d), a default judgment

may be entered against the United States "only if the claimant establishes a claim

or right to relief by evidence that satisfies the court."  *See* Fed. R. Civ. P. 55(d).

This Court has interpreted this provision to mean that the entry of default

judgment against the United States should not be based simply on a failure to file

an answer or responsive pleading.  *See Sun v. United States*, 342 F. Supp. 2d 1120,

1124 (N.D.Ga. 2004) (Thrash, J.) (citing cases).  In so holding, this Court relied on

---

[1] Notably, Plaintiff continues make the false statement that the United States has had "nearly fourteen months" to respond to Plaintiff's allegations.  *See* Doc. 35-1 at 2.  While true that Plaintiff submitted its administrative claim to the U.S. House of Representatives in April 2023, the latter responded to the claim six months later, in October 2023.  Nonetheless, Plaintiff chose to wait until December 20, 2023 to file his federal court complaint (Doc. 1) and waited another two months to serve the complaint on the United States (Doc. 35-1 at 2).  The United States sought an extension on the April 15, 2024 answer deadline (Doc. 18), which was denied by the Court.  *See* Minute Order Dated April 16, 2024 (docket entry only).  After attempting (unsuccessfully) to work with Plaintiff regarding a new answer deadline, the United States filed a motion to leave to file its answer out of time.  *See* Doc. 21.  In short, the United States did not completely disregard the answer deadline for several months, as Plaintiff implies.

Wright, Miller & Kane's Federal Practice and Procedure, which states that that the "preferable" reading of Rule 55(d) is that it "precludes any default judgment for procedural violations by the United States." *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil*, § 2702 (3d ed.1998). The rationale is based on a concern that "that taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant. The private party must first demonstrate that there is some basis on which he is entitled on the merits of his claim to receive judgment." *See id* (quoting *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962).[2]

Applying that standard here, Plaintiff would not be entitled to receive a default judgment based on the United States' failure to file a timely answer, and Plaintiff cannot prevail on the merits of his claim. As the United States argued in its Motion for Judgment on the Pleadings (Doc. 27) and below, the Court lacks jurisdiction over the claims because they fall within the "intentional tort" exception to the FTCA. *See* Doc. 27 at 5-14; Doc. 34 at 2-4. *See also infra*, Section II. Moreover, even if the Court were to construe the claims as falling outside of

---

[2] *See Bonner v. City of Prichard, Ala*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting decisions issued by the Fifth Circuit as of September 30, 1981 as binding precedent on courts within the Eleventh Circuit).

the exception, Plaintiff has failed to state a claim upon which relief can be granted.  *See* Doc. 27 at 14-19; Doc. 34 at 4-13.  *See also infra*, Sections III and IV.[3]

Plaintiff repeatedly requests the Court to hold an evidentiary hearing before its rules on Motion.  *See* Doc. 35-1 at 6, 7, 14, 15, 18, 20, 24.  Plaintiff states his intention to use the evidentiary hearing as a basis to subpoena witnesses and documents.  *See id.* at 7.  It appears that Plaintiff is using this request as a means to obtain discovery despite the Court's entry of a motion staying discovery until it rules on the pending motions. *See* Doc. 31.  However, because the Complaint lacks merit on its face, no discovery or evidentiary hearing is needed for the Court to dismiss the Complaint.  Moreover, allowing an evidentiary hearing would pull Members of Congress away from their official duties on behalf of the taxpayers to be subjected to questioning for a matter that can be resolved on the papers.

---

[3] Because Plaintiff is not entitled to relief even if the Court were to accept the well-pleaded allegations of the Complaint as true, an entry of default judgment would not be warranted even under the standard that applies to private parties. *See* Doc. 35-1 at 4.

## II.   The Court lacks subject matter jurisdiction over Plaintiff's claims because they fall within the intentional tort exception to the FTCA.[4]

The intentional tort exception to the FTCA bars any claim "arising out of" libel, slander or any of the other torts listed in section 2680(h). *See* 28 U.S.C. § 2680(h).  As discussed in the United States' Motion for Judgment on the Pleadings, the Eleventh Circuit has held that a claim "arises out of" a § 2680 excepted tort if the governmental conduct that is essential to the plaintiff's cause of action is encompassed by the tort. *See* Doc. 27 at 6-8 (citing cases). *See also O'Ferrell v. United States*, 253, F.3d 1257, 1266 (11th Cir. 2001). This inquiry is based on the substance of the allegations, not on the manner in which Plaintiff describes his claim. *See Zelaya v. United States*, 781 F.3d 1315, 1333-34 (11th Cir. 2015) (explaining that "a plaintiff cannot circumvent the exception simply through the artful pleading of its claims"). If a claim is barred by the intentional tort exception, the Court lacks subject matter jurisdiction to hear it. *See id.* at 1321-22.

In his Motion, Plaintiff acknowledges that he cannot assert claims based on allegations of defamation (Doc. 35-1 at 13, 17).  He claims, instead, that his

---

[4] Although this argument is addressed in the third section of the Motion, the United States is addressing it first because issues of the Court's jurisdiction to hear a case must be resolved before any other issues can be addressed. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[J]urisdictional questions ordinarily must precede merits determinations . . . . ")

invasion of privacy and conspiracy claims are based on the disclosure of private information regardless of its content.  *See* Doc. 35-1 at 15, 17-18.  However, the Eleventh Circuit has cautioned against relying on the plaintiff's own denomination of his claims and, instead, has directed district courts to look at the substance of the allegations themselves to determine if they arise out of one of the excepted claims.  *See Zelaya*, 781 F.3d at 1333-34.

Here, the Complaint repeatedly alleges that the Committee promoted a false, harmful and outrageous narrative about Plaintiff.[5]  Even in his Motion, Plaintiff repeatedly argues that the United States harmed his career and reputation "to advance a pre-ordained political narrative."  *See* Doc. 35-1 at 1, 6. He also argues that the goal of the alleged conspiracy was "to lie and defame him."  *See* Doc. 35-1 at 17.

In short, the crux of Plaintiff's claims, as he describes them in his Complaint and the Motion, are based on the content of information the Committee allegedly disclosed to the public, not the private nature of the information.  This amounts to the type of "false light" invasion of privacy claim

---

[5] As the United States highlighted in its Motion for Judgment on the Pleadings (Doc. 27 at 9-10), numerous allegations in the Complaint concern the allegedly harmful "narrative," "story," "allegation" and falsity promoted the Committee, which Plaintiff asserts harmed his reputation. *See, e.g.*, Doc. 1, ¶¶ 2, 6, 34, 49, 51, 55, 68, 74, 83.

that the Eleventh Circuit repeatedly has held falls within the intentional tort exception to the FTCA. *See, e.g., Cadman v. U.S.*, 541 F. App'x 911, 913 (11th Cir. 2013); *O'Ferrell v. U.S.*, 253 F.3d 1257, 1265-66 (11th Cir. 2001).[6]

Plaintiff contends that *Block v. Neal* supports his argument that he has "pleaded an injury which was independent from an exempt claim" (Doc. 35-1 at 15-16) and that *O'Ferrell v. United States* is distinguishable because there, unlike here, the harm to the plaintiff "was solely the result of the release of false information relating to them being suspects in a crime" (Doc. 35-1 at 17).

Contrary to Plaintiff's argument, the specific injury alleged in the Complaint arises from allegations that are tantamount to libel and slander. The injury that Plaintiff alleges is to his reputation. *See* Doc. 1, ¶¶ 1, 6, 45, 47, 69, 74. *See also* Doc. 35-1 at 1. This injury stems from the Committee's allegedly false narrative to the media that Plaintiff attempted to obstruct its investigation by advising his client, Cassidy Hutchinson, to misrepresent her recollection of events to the Committee. *See* Doc. 1, ¶¶ 5, 6, 24, 51, 53. As in *O'Ferrell*, the allegations that support the injury arise out of the excepted torts of libel and

---

[6] A more detailed description of these cases can be found in the United States' Motion for Judgment on the Pleadings. *See* Doc. 27 at 7-9.

slander.[7]  In contrast, the Complaint does not allege any injury resulting from any other disclosure purportedly made by the Committee.

Plaintiff attempts to distinguish *Metz v. United States* by arguing that the excepted claim in that case was "essential" to the plaintiff's invasion of privacy claim, whereas here, "the content of the statements is not essential to [his] claims."  *See* Doc. 35-1 at 17-18.  This argument is belied by the allegations themselves, which focus on the content of the Committee's alleged disclosure to the news media.  *See* Doc. 1, at ¶¶ 2, 4, 5, 6, 34, 43, 45, 48, 56, 57, 70, 71, 83, 88.  If the Court were to disregard the numerous allegations of false narratives, it would be impossible to determine how the disclosure of information to the news media caused any harm to Plaintiff.

Finally, Plaintiff claims that *Cadman v. U.S.* is not instructive here because it did not discuss the release of private information.  In *Cadman*, the Eleventh Circuit affirmed the district court's dismissal of the complaint because "all of the allegedly tortious actions here are based on 'statements, representations, or imputations'" by the government.  *See Cadman*, 541 F. App'x at 914.  To the extent that Plaintiff is basing his claim on an alleged statements by the Committee to CNN that Plaintiff had advised his client to say she did not recall details that she

---

[7] *See O'Ferrell*, 253 F.3d at 1266.  *See also Cadman v. U.S.*, 541 F. App'x 911 (11th Cir. 2013); *Metz v. U.S.*, 788 F.2d 1528, 1534 (11th Cir. 1986).

did (Doc. 1, ¶ 55) or on "direct conversations between agents of the January 6 Committee and outside third parties," (Doc. 35-1 at 9), *Cadman* is directly on point and requires dismissal.

In similar instances where a plaintiff has tried to plead around the intentional tort exception, the Eleventh Circuit has instructed courts to look beyond the plaintiff's characterization of his claims to the actual substance of the allegations.[8]  When done here, the allegations require the conclusion that the claims are barred by the exception.  Because Plaintiff's invasion of privacy claim is barred, his civil conspiracy claim, which is derived from the invasion of privacy claim, is likewise barred.  *Cf. Goble v. Ward*, 628 F. App'x 692, 699 (11th Cir. 2015) ("Although Count IV alleges civil conspiracy, not misrepresentation, § 2680(h)'s clause forbidding '[a]ny claim arising out of ... misrepresentation [ or] deceit' applies to Count IV.'") (internal citations omitted).

---

[8] *See Alvarez v. United States*, 862 F.3d 1297, 1304 (11th Cir. 2017) ("[I]t is of no consequence that Plaintiffs characterize the alleged breached duties as other than misrepresentation because 'a plaintiff cannot circumvent the misrepresentation exception simply through the artful pleading of its claims'") (quoting *JBP Acquisitions, LP v. U.S. ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000)); *Zelaya*, 781 F.3d at 1321 (explaining that "a plaintiff cannot circumvent the [intentional tort] exception simply through the artful pleading of its claims").

III.   <u>**Plaintiff has not stated a claim for the publication of private facts.**</u>

Even if the Court were to find that it had subject matter jurisdiction to hear Plaintiff's claim alleging invasion of privacy based on the publication of private facts, Plaintiff has not sufficiently alleged such a claim in his Complaint. Specifically, he has failed to plausibly allege three of the five elements of such a claim:  (1) that "private" facts related to him were published (see subsections A and B, below), (2) that such facts were not a matter of public concern (see subsection C, below) or (3) that the publication of such facts would be highly offensive to a reasonable person (see subsection D, below).  The United States will address each of these three elements below.

### A. Plaintiff has not identified the allegedly "private facts" that were publicly disclosed.

Plaintiff has not identified the private facts that he claims the Committee publicly disclosed.  Although Plaintiff points the Court generally to the transcripts of testimony from his former client, Cassidy Hutchinson, before the Committee as constituting at least some of the private information allegedly disclosed, (Doc. 35-1 at 8); there are six different transcripts of Hutchinson's interviews with the Committee, consisting of hundreds of pages of testimony.[9]

---

[9] The transcripts can be found at https://january6th-benniethompson.house.gov/news/press-releases/release-select-committee-

Thus, this reference in insufficient to put the United States on "fair notice" as to which specific facts contained within Hutchinson's testimony allegedly were private and improperly disclosed, as required under Rule 8(a) and the Supreme Court's decision in *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (holding that a complaint fails to state a claim when it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Conley v. Gibson*, 355 U.S. 41, 42 (1957)) (alteration in original).

Even if Plaintiff's generalized reference to the transcripts were sufficient, Plaintiff goes on to speculate that there "may be" additional disclosures over and above the transcripts:

> The dissemination of private information may not have been only through the leaking of the transcripts. ***It very probably*** also was through direct conversations between agents of the January 6 Committee and outside third parties.

---

materials-5 (2/23/2022 and 3/7/2022 transcripts); https://january6th-benniethompson.house.gov/news/press-releases/release-select-committee-materials-3 (5/17/2022 and 6/20/2022 transcripts); and https://january6th-benniethompson.house.gov/news/press-releases/release-select-committee-materials-0 (9/14/2022 and 9/15/2022 transcripts).  The Court may take judicial notice of these governmental website.  *See Lamonte v. City of Hampton, Ga.*, 576 F. Supp. 3d 1314, 1327 n.12 (N.D. Ga. 2021) ("It is established law that a court may take judicial notice of government websites.").  Additionally, the court may consider extrinsic documents on a motion to dismiss for failure to state a claim when, as here, they are central to the plaintiff's claim and authenticity is not challenged.  *See Speaker v. U.S. Dept. of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010); *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (same for motions for judgment on the pleadings).

*See* Doc. 35-1 at 14 (emphasis added).  *See also* Doc. 35-1 at 9-10 ("It is probable that agents of the Committee also spoke directly with media sources about personal and private information.").

With neither a description of the allegedly private information disclosed, nor a document that would allow the United States to glean that information, it is impossible for the United States to identify the allegedly private information.  As above, this allegation does not provide the United States with fair notice of the basis for Plaintiff's claim.

Although Plaintiff has previously argued that this lack of specific information will be remedied if and when he is able to engage in discovery, *see* Doc. 32 at 14 ("Only discovery will bear out the actual facts here . . . ."); in the instant Motion, Plaintiff argues, instead, for an evidentiary hearing that would allow him to subpoena witnesses for testimony and documents.  *See* Doc. 35-1 at 7. *See also id.* at 14 (stating that if the United States "disingenuously" denies allegations, an evidentiary hearing is required wherein Mr. Passantino will call witnesses who will corroborate the actual facts").

Despite the fact that Plaintiff couches his request as one for an evidentiary hearing, it is clear that this is an attempt to seek discovery.  However, the Supreme Court has made it clear a plaintiff cannot move past the pleadings stage to discovery until he has properly pled a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662,

678-79 (2009) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing but conclusions.").  Plaintiff should not be permitted to use a deficient pleading to access discovery in this case.

### B. The transcripts of Hutchinson's interviews by the Committee did not contain any facts private to Plaintiff.

Even if the Court were to consider the transcripts as a whole (putting aside the unspecified conversations that Plaintiff claims "probably" occurred), they do not contain private facts about Plaintiff that could state an invasion of privacy claim.  They consist entirely of Hutchinson's testimony regarding her own experiences, whether related to January 6, her attempts to secure counsel to represent her during the Committee interviews, or the advice she received from Plaintiff.  Her testimony regarding her own experiences does not constitute matters concerning Plaintiff's private life.[10]

Plaintiff seems to argue that because the details of his representation of Hutchinson had not previously been publicly disclosed, they were private facts entitled to protection.  *See* Doc. 35-1 at 9.  However, the circumstances of an

---

[10] *See* Restatement (Second) of Torts § 652D (1977), Comment b ("The rule stated in this Section applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual.").  In D.C., courts have adopted the Second Restatement of Torts to determine the appropriate contours of a cause of action for invasion of privacy.  *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 11 (D.D.C. 2013).

attorney-client relationship are not typically privileged.[11]  Even if they were, Hutchison would have been entitled to waive privilege and share that information with third parties.[12]  The same is true of any legal advice that Plaintiff provided to her; as the holder of the privilege, Hutchinson was entitled to disclose that advice, as she did here.  An attorney does not have a reasonable expectation that the details of his attorney-client relationship will remain confidential (as distinguished from the client, who does have such an expectation).

Once Hutchinson disclosed the details of her relationship with Plaintiff to the Committee, they were no longer private.  She provided her testimony to members of the Committee as part of a Congressional investigation.  Her testimony was transcribed.  The resolution that stood up the Committee explained that the Committee was directed to investigate "and report" on the January 6 events.  *See* House Resolution 503 Dated June 30, 2021 at 4, § 3 (attached hereto as Exhibit "A").  Congressional committees routinely make their

---

[11] *See U.S. v. Western Elec. Co.*, 132 F.R.D. 1, 2 n.1 (D.D.C. 1990); *In re Sealed Case,* 877 F.2d 976, 979 (D.C. Cir. 1989).

[12] *See In re Grand Jury Proc. #5 Empaneled January 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005) ("Because the attorney-client privilege exists for the benefit of the client, the client holds the privilege.").  Similarly, the duties of confidentiality are imposed on the attorney, not the client.  *See* D.C. Rules of Professional Conduct, § 1.6.

findings a matter of public record.[13]  Plaintiff has not alleged that the Committee

provided him with any assurance that Hutchinson's testimony would not be

further disseminated.  In short, there was no reasonable expectation that, once

disclosed to the Committee, it would not be shared with the public.[14]

The Restatement cautions that "there is no liability for giving further

publicity to what the plaintiff himself leaves open to the public eye." *See*

Restatement (Second) Torts, § 652D.  Here, Plaintiff left his representation of

Hutchinson open to the public eye by agreeing to represent her in her testimony

before public officials in a Congressional investigation on a matter of public

interest.  Even if details of his representation were not yet known to the public

---

[13] For example, transcripts (or excerpts thereof) were made publicly available in connection with the House Committee on Oversight and Accountability's investigation of Lois Lerner and Operation Fast & Furious.  *See* https://oversight.house.gov/wp-content/uploads/2014/03/Lerner-Report1.pdf; https://oversight.house.gov/wp-content/uploads/2012/08/July-4-2011-Transcribed-Interview-of-Acting-ATF-Director-Kenneth-Melson.pdf. *See Lamonte v. City of Hampton, Ga.*, 576 F. Supp. 3d 1314, 1327 n.12 (N.D. Ga. 2021) (courts may take judicial notice of government websites).

[14] In fact, Plaintiff does not claim that the Committee did anything wrong when it made the transcripts publicly available on its website in December 2022.  Rather, his focus is on an earlier alleged "leak" of the transcripts to CNN.  *See* Doc. 35-1 at 9 (arguing that the fact that Congress subsequently made the transcripts publicly available is irrelevant).  If the facts were "private," then he should be concerned regardless of the method of disclosure. Rather, the straightforward conclusion is that the details of Plaintiff's representation were not private, whether they were shared by his client with the Committee, leaked to the media, or disclosed to the public via a Congressional website.

prior to the alleged leak of the transcripts, they were no longer private once Hutchinson disclosed them to the Committee.

> ### C. The transcripts were a matter of public concern because they involved information related to the investigation of the January 6 events.

As Plaintiff concedes, D.C. law excludes matters of public concern from the ambit of its invasion of privacy claim.  However, he argues that "the intimate details" of his representation of Hutchinson were not a matter of public concern. *See* Doc. 35-1 at 10.

According to the Restatement, "Included within the scope of legitimate public concern are matters of the kind customarily regarded as 'news.'" *See* Restatement (Second) Torts, § 652D, comment on clause (b), section (g). Similarly, the Supreme Court, in the *Bartnicki v. Vopper* case cited by Plaintiff, found that an intercepted call between a union president and a union organizer regarding labor negotiations involved a matter of "public concern" because of its newsworthy nature.  *See Bartnicki*, 532 U.S. 525, 535 (2001).

Here, Plaintiff repeatedly alleges that the details of his representation of Hutchinson received wide attention and news coverage by CNN and other media outlets.  *See* Doc. 1, ¶¶ 4-5, 45-47, 51-55, 61, 68.  Thus, based on his own allegations, his representation was a matter of public concern.

Plaintiff cites to the dissent in *Bartnicki* to argue that not all facts regarding a public figure are a matter of public importance.  *See* Doc. 35-1 at 10.  However, this is not what the United States has argued—the United States is contending that it is the subject itself, not Plaintiff, that is the matter of public concern. Moreover, the *Bartnicki* dissent does not support Plaintiff's argument.  The dissent in *Bartnicki* disagreed with the majority that an individual foregoes his right of privacy with regard to a personal conversation that was involuntarily intercepted *regardless* of whether it was a matter of public concern. *See Bartnicki* at 554-55 ("Even where the communications involve public figures **or concern public matters**, the conversations are nonetheless private and worthy of protection.") (emphasis added).  In contrast here, D.C. law specifically excludes matters of public concern from the ambit of an invasion of privacy claim.[15]  Even putting aside this distinction, Plaintiff's conversations with his client were not surreptitiously recorded; his client chose to disclose those conversations to the Committee, as was her right.

In short, because Plaintiff's own allegations admit the newsworthy nature of Plaintiff's representation of Hutchinson, there is no dispute that this is a

---

[15] *Bartnicki* was not addressing the D.C. invasion of privacy cause of action.

matter of public concern and cannot serve as the basis for an invasion of privacy claim under D.C. law.

### D. Plaintiff's only basis for alleging that the release of the information was "highly offensive" was because of his allegation that it was private.

As to the fifth element of his claim, Plaintiff argues the disclosure of information regarding his attorney-client relationship was highly offensive but does not explain why.  *See* Doc. 35-1 at 11.  He simply states that, "It was the fact that Defendant released private information about an attorney-client relationship that was highly offensive and damaging . . . ."  *See id.* In other words, because the information allegedly was private, its disclosure was offensive.

But this reasoning conflates the "private" element with the "highly offensive" element of the claim, which D.C. law treats as separate elements. Even assuming the existence of the attorney-client relationship was a private fact, that alone is insufficient to show that its disclosure would be highly offensive.

The Restatement cautions that not all private actions fall into this category and gives examples of where a reasonable man would not take offense at the disclosure of private facts regarding his life, such as his return from a visit or a camping trip in the woods, and even embarrassing situations such as where he clumsily tripped and injured himself.  Restatement (Second) Torts, § 652D, comment on clause (a), section (c).  As with the examples above, the disclosure of

the details of Plaintiff's attorney-client relationship with Hutchinson is not the type of information the disclosure of which would highly offend a reasonable person.  Plaintiff has not alleged any facts sufficient to indicate how it could do so.[16]

**IV.**   **Plaintiff has failed to state a claim for civil conspiracy.**

To establish a prima facie case of civil conspiracy, Plaintiff needs to prove: (1) an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) injury caused by an unlawful overt act performed by one of parties to the agreement, (4) pursuant to and in furtherance of the common scheme. *See Weishapl v. Sowers*, 771 A.2d 1014, 1023 (D.C. Ct. App. 2001). D.C. law does not recognize an independent tort action for civil conspiracy. *See id.* Thus, to allege a valid civil conspiracy claim, Plaintiff must be able to allege facts sufficient to state a claim for his underlying invasion of privacy claim. *See id.*  As shown above, Plaintiff has failed to do so. As a result, his civil conspiracy claim fails as well.

---

[16] To the extent that Plaintiff is suggesting that the disclosure of his attorney-client relationship was part of the Committee's allegedly false narrative about him, then his claim would arise out of the excepted torts of libel or slander.  *See* Section II, *supra.*

Additionally, the Complaint fails to allege specific facts sufficient to establish an agreement between the Committee and a co-conspirator, one of the essential elements of a civil conspiracy claim. *See Weishapl*, 771 A.2d at 1023. Conclusory allegations that an agreement exists do not suffice to state a claim under Rule 8(a). *See Twombley*, 550 U.S. at 556-57. Therefore, Plaintiff's bare allegation, without any supporting facts, that "Defendant and its agents engaged in the foregoing actions in agreement with unnamed co-conspirators, including individuals that worked at media companies, to accomplish their goal of invading Mr. Passantino's privacy and attorney-client relationship to cause harm to his practice of law and standing in the community," is insufficient to state a claim for civil conspiracy.

Plaintiff argues that his allegation of a conspiracy between the Committee and unnamed "media companies" sufficiently alleges the existence of an agreement. In support, he cites to *Friends Christina High School v. Geneva Financial Consultants*, 39 F. Supp. 3d 58 (D.D.C. 2014). In *Friends*, the plaintiff identified the specific members of the alleged conspiracy and identified specific terms of the conspiratorial agreement. *See id.* at 65. In contrast here, Plaintiff fails to identify who entered into the conspiracy with the Committee, alleging only "unnamed co-conspirators, including individuals that worked at media companies." *See* Doc. 1, ¶ 88. Unlike *Friends*, Plaintiff does not allege any specific terms of the

agreement entered into by the alleged co-conspirators.  *Compare Friends* at 65 *with*

Doc. 1, ¶ 88.  As a result, *Friends* does not support his contention that he

sufficiently alleged a conspiracy.[17]

In sum, because Plaintiff has failed to state a claim for invasion of privacy

or civil conspiracy, he cannot show a right to relief as required by Rule 55(d).

## <u>CONCLUSION</u>

For the reasons set forth above, the United States respectfully requests the

Court to deny Plaintiff's Motion for Default Judgment.

This 26th day of June, 2024.

> Respectfully submitted,
> RYAN BUCHANAN
> *United States Attorney*
>
>
> */s/ Neeli Ben-David*
> —————————————————
> NEELI BEN-DAVID
> *Assistant United States Attorney*
> Georgia Bar No. 049788
> Neeli.Ben-David @usdoj.gov
> ANDRES H. SANDOVAL
> *Assistant U.S. Attorney*
> Georgia Bar No. 643257
> Andres.Sandoval@usdoj.gov
> A. JONATHAN JACKSON
> *Assistant U.S. Attorney*
> Georgia Bar No. 852077
> Jonathan.Jackson2@usdoj.gov

---

[17] *See Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

75 Ted Turner Drive SW
Atlanta, GA 30303
Tel (404) 581-6000
Fax (404) 581-6181

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

STEFAN PASSANTINO,

      PLAINTIFF,

*v.*

UNITED STATES OF AMERICA,

      DEFENDANT.

Civil Action No.
4:23-cv-00300-ELR

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1D, that the foregoing motion and brief have been prepared using Book Antiqua, 13-point font.

June 26, 2024

*/s/ Neeli Ben-David*
NEELI BEN-DAVID
*Assistant United States Attorney*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

STEFAN PASSANTINO,

    PLAINTIFF,

    *v.*

UNITED STATES OF AMERICA,

    DEFENDANT

Civil Action No.
4:23-cv-00300-ELR

## CERTIFICATE OF COMPLIANCE

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Bryan P. Tyson, Esq.
The Election Law Group
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339

Jesse R. Binnall, Esq.
Shawn M. Flynn, Esq.
Jared J. Roberts, Esq.
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314

June 26, 2024

*/s/ NEELI BEN-DAVID*
NEELI BEN-DAVID
*Assistant United States Attorney*