**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | |
|---|---|
| **STEFAN PASSANTINO**, <br><br> *Plaintiff,* <br><br> **v.** <br><br> **UNITED STATES OF AMERICA**, <br><br> *Defendant.* | Case No. 4:23-CV-00300-ELR |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR INDICATIVE RULING ON RULE 60(b) MOTION**

Pursuant to Federal Rule of Civil Procedure 60(b)(6), a court may remedy a violation of 28 U.S.C. § 455 by vacating a prior order or judgment. Recently, this Court has been reported as the Subject Judge privately reprimanded by the Eleventh Circuit for attending a partisan campaign event for Fani Willis. Such reporting causes a reasonable observer to call into question the appearance of impartiality and justice. Accordingly, Plaintiff respectfully requests that this Court issue an indicative ruling that it would grant Rule 60(b)(6) relief, vacating its prior order and judgment upon remand, and recusing itself from further proceedings.

## BACKGROUND

This lawsuit stems from the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol's (the "Committee")

1

brazen abuse of governmental power that sought to demolish the impeccable reputation of Plaintiff, Stefan Passantino, a veteran attorney with over thirty (30) years of distinguished service, including as Deputy White House Counsel. In a calculated and malicious campaign, the Committee flouted ethical boundaries and constitutional limits, leaking confidential details of Mr. Passantino's attorney-client relationship with a witness, Cassidy Hutchinson, to the media. These actions were not mere oversights, but rather, deliberate strikes to damage Mr. Passantino.

The Committee was structured and executed as a partisan body to target President Trump and anyone deemed connected to him. It conducted one-sided hearings that featured selectively edited video, dramatic testimony presented without cross-examination or rebuttal, and a singular focus on implicating President Trump while downplaying or ignoring security failures, intelligence breakdowns, and the actions of other participants. Far from a neutral inquiry into the events of January 6, the Committee operated as an extension of political warfare to go after President Trump and those aligned with him.

At the same time the Committee was conducting its one-sided investigation, Fulton County District Attorney Fani Willis was pursuing a parallel political prosecution against President Trump and eighteen of his associates and supporters. Willis, a partisan Democrat, brought sweeping RICO and related charges centered on President Trump's lawful challenges to

the 2020 election results in Georgia, employing novel legal theories that effectively criminalized standard post-election advocacy and legal strategy.

Ultimately, this Court issued an order, which is currently on appeal: (1) setting aside the entry of default; (2) granting the Defendant's motion to file an out-of-time Answer; (3) denying Mr. Passantino's Motion for Default Judgment; and (4) granting Defendant's Motion for Judgment on the Pleadings and dismissing Mr. Passantino's Complaint. Dkt. No. 45. The Court subsequently entered a final judgment. Dkt. No. 46.

On December 10, 2025, the Judicial Council of the Eleventh Circuit adopted an amended final report regarding misconduct by an unidentified "Subject Judge." Order, Judicial Complaint No. 11-25-90212, at 1 (11th Cir. Judicial Council Feb. 11, 2026) ("Order") (adopting Amended Final Report of the Special Committee ("Final Report")).[1] The Final Report found that "the Subject Judge engaged in judicial misconduct by attending a partisan political event. Specifically, the Subject Judge went to an event hosted by a District Attorney's campaign." Final Report at 16. At the event, "the judge had to pass through a lobby area adorned with campaign signs." *Id.* at 11. The event "was sponsored by the District Attorney's campaign or donors to that campaign,"

---

[1] See, https://www.ca11.uscourts.gov/sites/default/files/judicial_complaints/11-25-90212%20Judicial%20Council%20Order_0.pdf.

and its "overarching purpose . . . was to promote [the] District Attorney's political campaign." *Id*. at 17. The "Subject Judge conceded that the District Attorney event could reasonably be considered a political function." *Id*. at 11.

After the event, "someone sent the judge a photograph in which the judge can be seen holding [a] martini glass in which [an] appetizer was served . . . [T]he next day, the judge showed the photograph to some of the judge's staff members." *Id*. at 12. "Three former clerks recalled the Subject Judge saying that the judge had consumed martinis at a victory party for a District Attorney." *Id*. at 8; *see also id*. at 3 ("Immediately after you presided over . . . a criminal hearing, you told an intern that you had too many martinis the night before at what may have been a political event for a District Attorney."). The Final Report concluded that the Subject Judge's attendance at the event violated Canon 5 of the Code of Conduct for United States Judges, which states that a "judge should refrain from political activity." *Id*. at 16–17 (quoting Canon 5(A)(1)(3)). The "Subject Judge's attendance at the political event— where someone photographed the judge—had the potential to erode public confidence in the independent and non-partisan nature of the judiciary." *Id*. at 17. The Final Report added that "it appears to be a mere matter of good

4

fortune that the Subject Judge's attendance did not garner media attention." *Id.*[2].

The Eleventh Circuit "issued a private reprimand" to the Subject Judge. Order at 1. "In addition, the subject judge has agreed to (1) issue letters of apology to six former law clerks interviewed by investigation counsel; (2) forego service as chief judge should the Subject Judge be otherwise eligible to serve in that capacity; and (3) indefinitely refrain from service on any Judicial Conference committee." *Id.* at 1–2. The Committee on Judicial Conduct and Disability of the Judicial Conference of the United States later affirmed the Eleventh Circuit's order. *In re Judicial Complaint*, C.C.D. No. 26-01 (Comm. on Judicial Conduct and Disability of the Jud. Conf. of the U.S., May 22, 2026).

While several news outlets identified Judge Ross as the Subject Judge, on June 15, 2026, Judge Ross all but confirmed that reporting in a holding stating:

> [T]he Court cannot discount the potential that the undersigned's attendance at an event sponsored by Willis's campaign, even if that attendance was "only for the purpose of reuniting with former colleagues[,]" Judicial Council Report at 17, would lead an objective observer to perceive that the undersigned supports Willis's position.

---

[2] The Final Report also found other instances of misconduct which are not the subject of this Motion.

*United States v. Raffensperger*, No. 1:26-CV-00485-ELR, Dkt. No. 127, at 5 (N.D. Ga. Jun. 15, 2026). In doing so, the Court granted a similar motion brought by the United States.

**ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 62.1, a district court may consider and issue an indicative ruling on a Rule 60(b) motion while a case is pending appeal. *Munoz v. United States*, 451 Fed. App'x 818, 820 (11th Cir. 2011). Rule 60(b) provides a method for obtaining relief from a final judgment. Accordingly, Plaintiff respectfully moves this Court issue an indicative ruling finding that it would grant Plaintiff's Rule 60(b) motion, vacating its order and judgment at Dkt. Nos. 45 and 46.

**1.    Rule 60(b) Relief from this Court's Judgments is Appropriate.**

Under Rule 60(b), a district court may grant relief from a final judgment, order, or proceeding for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). "The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'" *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (quoting *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)) (emphasis in original). While this remedy is reserved for extraordinary

6

circumstances, *see Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996), such circumstances are present here.

One such reason the Supreme Court permits relief under Rule 60(b)(6) is to remedy violations of 28 U.S.C. § 455. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988) ("Rule 60(b)(6) relief is accordingly neither categorically available nor categorically unavailable for all § 455(a) violations."). Specifically, when courts make this determination, the Supreme Court noted:

> We conclude that in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice.

*Id.* (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)) (internal citation omitted).

The Eleventh Circuit has likewise opined on the importance of the appearance of impartiality. "[T]he test for determining whether a judge's impartiality might reasonably be questioned is an objective one, and requires asking whether a disinterested observer fully informed of the facts would entertain a significant doubt as to the judge's impartiality." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla.*, 140 F.3d 898, 912 (11th Cir. 1998)

(citing *Diversified Numismatics, Inc. v. City of Orlando*, 949 F.2d 382, 385 (11th Cir. 1991)). The standard is "designed to promote the public's confidence in the impartiality and integrity of the judicial process." *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1263 (11th Cir. 2009) (quoting *Davis v. Jones*, 506 F.3d 1325, 1332 n.12 (11th Cir. 2007)). Thus, "[a] federal judge *must* disqualify herself if her 'impartiality might reasonably be questioned.'" *Lomax v. Ruvin*, 476 Fed. App'x 175, 176 (11th Cir. 2012) (quoting 28 U.S.C. § 455(a)) (emphasis added). "Most important, the benefit of the doubt must be resolved in favor of recusal." *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001).

As in *Liljeberg*, recusal of the Court and vacatur of the Court's prior order and judgment is appropriate. In *Liljeberg*, the defendant, Liljeberg, sought to develop a hospital. *Liljeberg*, 486 U.S. at 852. To advance the project, Liljeberg pursued two parallel sets of negotiations: one with Loyola University for the purchase of land and rezoning of adjacent university property that would bring substantial profit to Loyola and another with Hospital Affiliates International ("HAI") to develop and finance the hospital. *Id.* at 853–54. The success of both tracks depended on obtaining a state certificate of need. *Id.* at 852.

After HAI filed for and obtained the certificate of need, a dispute arose between Liljeberg and HAI over whether Liljeberg had transferred proper ownership to HAI under their agreements. *Id.* at 854–55. HAI then sued Liljeberg for a declaratory judgment establishing its ownership of the

8

certificate. *Id.* at 856. At the same time, Liljeberg continued negotiations with Loyola, whose interest in the project was conditioned on Liljeberg retaining control of the certificate of need. *Id.* at 857. The case was assigned to District Judge Robert Collins, a Loyola trustee who had attended Board meetings at which the Liljeberg–Loyola hospital project was discussed. *Id.* at 853–56. Judge Collins ruled in Liljeberg's favor after a bench trial, but he never disclosed his affiliation with the university. *Id.* at 856–58. Although Judge Collins had actual knowledge of Loyola's interest in 1980 and 1981, he claimed to have forgotten it by the time of trial. *Id.* at 861. Even after becoming aware, he neither recused himself nor disclosed the conflict. *Id.* at 857–58, 861.

The Supreme Court emphasized the "appearance of impropriety that § 455(a) was intended to prevent." *Id.* at 867. This created a violation that was "neither insubstantial nor excusable." *Id.* at 867. Accordingly, the Supreme Court noted:

> Providing relief in cases such as this will not produce injustice in other cases; to the contrary, the Court of Appeals' willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered.

*Id.* at 868. And, ultimately, the Supreme Court found it appropriate to vacate the judgment. *Id.*

The same concerns are present here, warranting recusal and vacating the Court's order and judgment on appeal. Based on the reports identifying Judge Ross as the Subject Judge, there is an appearance of impropriety that warrants reconsideration of this Court's prior order and judgment. It has been reported that the Subject Judge attended a partisan event in support of Fani Willis, who attempted to prosecute President Trump for conduct related to the 2020 Presidential Election. During the same period, the Committee was conducting its investigation into the events of January 6, 2021, targeting many of the same individuals and issues that ultimately caused Plaintiff's harm. Indeed, The United States House Committee on the Judiciary itself discovered that Ms. Willis was coordinating her investigation with the Committee.[3]

Thus, if Judge Ross is the Subject Judge, that conduct raises the appearance of bias because the Judge's public support for a prosecutor who was actively pursuing criminal charges against President Trump and his associates—while the Committee was simultaneously investigating and targeting overlapping Trump-aligned individuals in connection with the 2020 election—creates a reasonable perception that the Judge may be predisposed

---

[3] Press Release, *Chairman Jordan and Rep. Loudermilk Launch Inquiry into Fani Willis Colluding with January 6 Committee*, THE UNITED STATES HOUSE COMMITTEE ON THE JUDICIARY (Dec. 5, 2023), https://judiciary.house.gov/media/press-releases/chairman-jordan-and-rep-loudermilk-launch-inquiry-fani-willis-colluding.

against claims challenging the Committee's actions or the related prosecutorial efforts. A reasonable observer could fairly question whether the Judge can remain impartial in a case arising from the Committee's conduct.

Accordingly, the Court "is called upon to rectify an oversight and to take the steps necessary to maintain public confidence in the impartiality of the judiciary." *Liljeberg*, 486 U.S. at 861. If the Court finds that its "impartiality might reasonably be questioned, then [it] should also find that the statute has been violated." *Id.* (internal citations omitted). As the Supreme Court concluded, "[t]his is certainly not an impossible task." *Id.*

This Court has already taken similar action in *Raffensperger*. In *Raffensperger*, the United States Department of Justice brought suit stemming from "Georgia Secretary of State Brad Raffensperger's refusal to provide the United States with election records, in violation of the Civil Rights Act of 1960, 52 U.S.C. § 20703." *United States v. Raffensperger*, No. 1:26-CV-00485-ELR, Dkt. No. 112.1, at 2 (N.D. Ga. May. 29, 2026). Based on the same conduct described above, the Court granted the United States' motion to disqualify, recusing itself from further proceedings because the "perceived support of Willis's position on election integrity could cause an objective observer to significantly doubt the undersigned's impartiality in this case." *United States v. Raffensperger*, No. 1:26-CV-00485-ELR, Dkt. No. 127, at 5 (N.D. Ga. Jun. 15, 2026).

11

Plaintiff asks the Court to take the same course of conduct here, where it has been reported that Ms. Willis was coordinating with the Committee; the same Committee who caused Plaintiff's harm, in the pursuit against President Trump and those affiliated with him. Because this Court attended a political event in support of Ms. Willis, its prior order and judgment should be vacated to prevent any injustice, as well as the appearance of injustice.

**2.  Rule 62.1 Permits this Court to Hear Plaintiff's Motion.**

"A party proffering newly discovered evidence may obtain an indicative ruling from a district court concerning relief from judgment pending appeal." *Franken v. Mukamal*, 449 Fed. App'x 776, 779 n.2 (11th Cir. 2011); Fed. R. App. P. 12.1). Rule 62.1 codified what the Eleventh Circuit followed for decades. In 2003, the Eleventh Circuit reversed the district court's ruling that it did not have jurisdiction to entertain a Rule 60(b) motion for reconsideration. *Mahone v. Ray*, 326 F.3d 1176, 1178 (11th Cir. 2003). In *Mahone*, the plaintiff filed a motion for reconsideration after filing their notice of appeal, alleging that the defendant engaged in fraud. *Id*. at 1179. While the district court found that it did not have jurisdiction over the plaintiff's motion, the Eleventh Circuit held that the district court may still entertain "motions on matters collateral to those at issue on appeal." *Id*. (citing *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001)). Thus, district courts presented with a Rule 60(b) motion while the

12

case is pending on appeal "should consider the motion and assess its merits." *Id.* at 1180.

Accordingly, the Federal Rules of Civil Procedure adopted Rule 62.1 to codify decisions such as the one in *Mahone. Munoz*, 451 Fed. App'x at 819 n.1. "[T]he rule provides that a district court may '(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.'" *Id.* (quoting Fed. R. Civ. P. 62.1(a)). In the event a district court indicates that it would deny the motion, the movant can appeal that denial. *Id.* at 820. If the district court indicates that it "would grant the motion or that the motion raises substantial issues," then the appellate court is permitted to remand the case to the district court for further proceedings. *Id.* at 819 n.1.

Thus, Plaintiff respectfully requests that this Court indicate if it would grant his Rule 60(b) motion to vacate this Court's prior order and subsequent judgment setting aside its entry of default, granting the Defendant's motion to file an out-of-time Answer, denying Mr. Passantino's Motion for Default Judgment, and granting Defendant's Motion for Judgment on the Pleadings and dismissing Mr. Passantino's Complaint. If this Court states that it would grant the Rule 60(b) motion, Plaintiff would promptly notify the Eleventh

13

Circuit of this Court's action. Fed. R. Civ. P. 62.1(b). The Eleventh Circuit would then be able to remand the matter to this Court to vacate the judgments.

**CONCLUSION**

Accordingly, Plaintiff respectfully requests that this Court enter an indicative ruling that it would grant Plaintiff's motion, vacating its order and judgment currently on appeal, and recusing itself from further proceedings after vacatur.

Dated: June 17, 2026                    Respectfully submitted,

*/s/ Jesse R. Binnall*
Jesse R. Binnall
Jared J. Roberts
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
jared@binnall.com

Bryan P. Tyson
TYSON YOUNKER LLC
1225 Johnson Ferry Road,
Suite 600-A
Marietta, GA 30068
Phone: 678-223-3160
btyson@tysonyounker.law

*Counsel for Plaintiff*
*Stefan Passantino*

14

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing motion was prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/   *Jesse R. Binnall*
Jesse R. Binnall (*pro hac vice*)

*Counsel for Plaintiff*
*Stefan Passantino*

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall

*Counsel for Plaintiff*
*Stefan Passantino*

16